**Sam POLUR, Plaintiff,**

v.

**AMERICAN STOCK EXCHANGE, INC., Royal/Grimm & Davis, Inc., Defendants.**

**No. 85 Civ. 7927 (KTD).**

United States District Court,
S.D. New York.

July 10, 1986.

Sam Polur, New York City, pro se.

Lord, Day & Lord, New York City, for defendant American Stock Exchange, Inc.; John J. Loflin, John E. Grimmer, of counsel.

Ross & Matza, New York City, for defendant Royal/Grimm & Davis, Inc.; Leonard M. Ross, of counsel.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Sam Polur is a lawyer and an investor and brings this lawsuit *pro se* to recover

the $4,800 purchase price for certain call options in the stock of G.D. Searle which he bought on the American Stock Exchange, Inc. through the discount brokerage house of Royal/Grimm & Davis, Inc. The call options had a striking price of $65.00 and an expiration date of February 1986. The purchase was made on September 6, 1985 without solicitation or advice from the defendant broker. Prior to the purchase the media had carried many stories concerning the July 18, 1985 tender offer for G.D. Searle stock and there had been an announcement that, by August 27, 1985, Monsanto had acquired 97.5% of the stock of G.D. Searle.

Sam Polur claims that he did not know of the tender offer when he purchased the options in question. He claims the discount brokerage house violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and Rule 10b–5 promulgated thereunder[1] by failing to advise him of the Monsanto tender offer and the media coverage concerning it. Sam Polur demands from Royal/Grimm & Davis, Inc. repayment of the monies he paid for the options as compensatory damages.

Sam Polur further complains that the American Stock Exchange violated the fraud provisions of the securities laws by continuing "to make a market in G.D. Searle common stock option contracts subsequent to Monsanto Company's tender offer having been duly made and accepted." Complaint ¶ 26. For this Polur wants both compensatory and punitive damages.

Counsel for the American Stock Exchange now moves "for an order pursuant to Rules 9(b), 12(c), and 56 of the Federal Rules of Civil Procedure" dismissing the complaint. I assume that summary judgment is being sought, particularly in light of the inch-thick pile of exhibits submitted. Counsel for the brokerage firm has moved for summary judgment both dismissing the complaint and seeking judgment on the counterclaim for the amount unpaid by Polur on his account.

At the same time, Sam Polur has moved for sanctions against the defendant broker for failure to produce certain documents at a deposition. The response to this motion shows that Polur was told at the deposition that the documents either do not exist or are not within the defendant's control. Polur's motion is denied.

Turning then to the defendants' motions for summary judgment, I have gone through the entire matter to see if Polur's claims might have any basis whatsoever. They do not. The entire complaint is truly frivolous.

Polur does not complain of any misstatement of fact. He cannot and does not deny that the media carried all of the facts which he now contends the defendants omitted to tell him. He complains that full disclosure to the public did not include him. He would trash any objectivity in the law and replace it with unnatural and uncalled for subjectivity. The securities laws call for full disclosure of material information to the investing public. They do *not* require that brokers and dealers do all the work for each investor; they do *not* require anyone to guarantee the value of any security; and they do *not* require that brokerage houses and exchanges insure prospective customers from the risks of loss in the market. Some malicious investors have the mistaken impression that the mere threat of punitive damages will force members of the financial community to save harmless all investors from any risk of loss. Nothing could be further from the truth. Polur in effect seeks some kind of reward for his own laziness and stupidity. This court cannot countenance such behavior, particularly on the part of an attorney. Accordingly, pursuant to Rule 11, Sam Polur is ordered to pay $5,000 to each of the defendants by way of costs and attorneys' fees.

---

1. The complaint refers only to the Securities Act of 1933, 15 U.S.C. § 77a *et seq.,* but I assume that the Securities Exchange Act of 1934 is also meant.

Sam Polur does not contest the motion by the brokerage defendant on its counterclaim for the balance due on his account.

Judgment will enter dismissing the complaint and granting judgment to the defendant Royal/Grimm & Davis, Inc. in the amount of $2,368.90 plus interest from September 6, 1985.

Submit judgment on five (5) days' notice within ten (10) days of the date hereof.

SO ORDERED.